# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

FREDERICK GREEN                    CIVIL ACTION NO. 21-3938

VERSUS                             JUDGE S. MAURICE HICKS, JR.

KIOLO KIJAKAZI                     MAGISTRATE JUDGE MCCLUSKY

## MEMORANDUM RULING

Before the Court is an unopposed Motion for Summary Judgment (Record Document 52) filed by Defendant Martin J. O'Malley ("O'Malley"),[1] Commissioner of the Social Security Administration ("SSA") seeking to dismiss all claims asserted by Plaintiff Frederick Green ("Green") under the Rehabilitation Act ("RA").[2] For the reasons contained herein, Defendant's unopposed Motion for Summary Judgment is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The present suit arises out of an employment relationship between Green and the SSA that was terminated on March 18, 2022. See Record Document 6 at 4. Green began working for the SSA in 2006, in the Shreveport, Louisiana field office. See Record Document 52-3 (Green Deposition with Attachments) at 2-3. During all times relevant to this suit, he held the position of a Claims Specialist, GS-11. See id. Green's duties included processing social security claims and interviewing applicants that were seeking benefits. See id. at 4-5. Liana Smith ("Smith") is an Operations Supervisor that was

---

[1] Defendant Kilolo Kijakazi was terminated from this matter on January 9, 2024, and O'Malley was added the same day.

[2] Green, acting *pro se*, filed documents in the record identified as "exhibits." See Record Document 28. Magistrate Judge McClusky stated in a subsequent minute entry that without a motion, the Court will take no action on any of those documents. See Record Document 29 at 2. Green has since filed numerous other "exhibits" into the record. See Record Documents 30-40, 44, 47-48, 51. Like the aforementioned "exhibits," absent a proper motion, it is unclear what action Green wishes the Court to take. Thus, the Court will take no action as to the "exhibits" since they do not constitute competent summary judgment evidence.

Green's first-line supervisor from 2018 through 2022. See Record Document 52-4 (Smith Declaration with Attachments) at 1.

On or about March 10, 2020, Green made a request for various accommodations based on his purported Post Traumatic Stress Disorder ("PTSD"), anxiety, irritable bowel syndrome ("IBS"), and "other related disabilities." See Record Document 52-4 at 2; see also Record Document 6 at 4. Green submitted a letter from a physician dated March 13, 2020, which recommended that he be allowed to work from home as he was at high-risk for exposure to COVID-19. See Record Document 52-4 at 2. Green began working at home full-time on March 23, 2020, after the issuance of an agency-wide evacuation order. See id.

While the accommodations request was pending, Smith had conversations with Green on March 10, 2020, and May 13, 2020, regarding his request. See Record Document 52-4 at 2. Smith informed Green on May 14, 2020, that within the next thirty days he should submit medical documentation substantiating his medical conditions and any limitations they caused. See id. at 2. Green submitted a Veteran's Affairs ("VA") medical report dated May 19, 2020, that listed his diagnoses. See id. at 3. On December 11, 2020, the National Reasonable Accommodations Coordinator ("NRAC") issued a decision letter to Green regarding his reasonable accommodation requests. See Record Document 54-2 at 9. The NRAC stated that the agency would grant Green's request for use of an ergonomic chair while working from home. See id. at 9. The NRAC denied Green's other reasonable accommodation requests because the medical documentation provided by Green did not establish that the requested accommodations were necessary for Green to perform the essential functions of his job. See id. at 10-12.

2

The SSA's Performance Assessment and Communication System ("PACS") is used by supervisors to rate an employee's performance. <u>See</u> Record Document 52-5 (Declaration of SSA Regional Attorney Melinda Newman with Attachments) at 42-43. The PACS offers three summary appraisal rating of record levels with clear distinctions among those performance levels to differentiate between high level employees with a Level 5 "Outstanding Contribution" and the "more typical successful employees" at a Level 3 "Successful Contribution." <u>See id.</u> at 43. Employees are also given the opportunity to submit a self-assessment at the end of the appraisal year to highlight his or her contributions and accomplishments made during that appraisal period. <u>See</u> Record Document 52-4 at 1. Green did not submit a self-assessment in either 2019 or 2020. <u>See id.</u>; <u>see also</u> Record Document 52-3 at 6. Green received a Level 3 rating in the four categories provided and an overall "Successful Contribution" in both 2019 and 2020. <u>See</u> Record Document 52-3 at 13; <u>see also</u> Record Document 52-4 at 5.

On February 23, 2021, Green filed a formal Equal Employment Opportunity Commission ("EEOC") complaint of discrimination alleging disparate treatment because of his disability and retaliation based on his 2020 appraisal. <u>See</u> Record Document 52-5 at 27. Green claims that this annual appraisal was "sharply different" from his past performance appraisals and the 2020 appraisal included information that was derogatory and defamatory, describing him as a "dishonest and disrespectful employee." Record Document 6 at 3. Green's formal EEOC complaint also mentioned a "failure to accommodate disability." <u>See</u> Record Document 52-5 at 32. In a letter accepting Green's complaint for investigation, the Agency advised Green that he would need to request EEOC counseling with respect to his reasonable accommodation claim. <u>See id.</u>; <u>see also</u>

Record Document 52-5 at 15. The Agency then conducted a formal investigation of Green's complaint regarding only the PACS claim from March 22, 2021, through May 17, 2021. See id. at 17. Green did not request an EEOC hearing after receiving a Report of Investigation on or about June 7, 2021. See id. at 15. On August 17, 2021, the SSA issued a Final Agency Decision ("FAD") on Plaintiff's formal complaint of discrimination. See id. at 2-13.

Green filed this lawsuit on November 11, 2021, seeking injunctive and monetary relief for discrimination and retaliation in violation of the RA of 1973, 29 U.S.C. § 706 and 791. See Record Document 1. He asserted in his complaint that following the filing of this lawsuit, Smith failed to properly approve his timesheet resulting in the reduction of his salary. See Record Document 6 at 2. On January 28, 2022, Smith issued Green a Notice of Proposed Removal due to alleged acts of misconduct including a refusal to attend meetings with Smith and unauthorized cancellation or rescheduling of applicant interviews. See Record Document 52-3 at 18; see also Record Document 52-4 at 3. Green had a hearing regarding this notice and asserts in his complaint that he reiterated his complaints of discrimination and retaliation. See Record Document 6 at 3. Green claims that following the hearing regarding his removal, Smith disabled his work account and as a result, he was unable to perform his work assignments. See id. 4. This had occurred before, but Green asserts in his complaint that this was retaliatory conduct. See id. Green was removed from the agency on March 18, 2022. See id. He then filed his amended complaint on March 22, 2022, to reflect his new grievances about Smith and his termination from the SSA. See id.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. See id. In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp., 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

In deciding unopposed summary judgment motions, the Fifth Circuit has noted that a motion for summary judgment cannot be granted simply because there was no opposition. See Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 fn.3 (5th Cir. 1995).

The movant has the burden to establish the absence of a genuine issue of material fact and, unless it has done so, the court may not grant the motion, irrespective of whether any response was filed. See Powell v. Delaney, 2001 WL 1910556, at 5-6 (W.D. Tex. June 14, 2001).  Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment. See id. at 1 and n.2; see also Thompson v. Eason, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and movant's evidence may be accepted as undisputed); UNUM Life Ins. Co. of America v. Long, 227 F. Supp. 2d 609 (N.D. Tex. 2002) ("Although the court may not enter a 'default' summary judgment, it may accept evidence submitted by [movant] as undisputed."); Bookman v. Shubzda, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) ("A summary judgment nonmovant who does not respond to the motion is relegated to his unsworn pleadings, which do not constitute summary judgment evidence.").

The court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994) (citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 and n. 7 (5th Cir. 1992), cert. denied, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)).

## ANALYSIS

### A.  Rehabilitation Act Claims

The RA forbids discrimination based on disability in federal employment, activities conducted by federal agencies, and programs receiving federal funds. See 29 U.S.C.

794. The RA states that "[n]o otherwise qualified individual with a disability ... shall solely by reason of his disability ... be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a). The RA defines disability in the same way as the Americans with Disabilities Act ("ADA"). See Kemp v. Holder, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam). Additionally, the RA and the ADA are analyzed under the same legal standards, and both offer the same remedies. See id. However, for the RA to be applicable, an individual must be discriminated against solely by reason of his disability. See Harrison v. Klein Indep. Sch. Dist., 856 F. App'x 480, 482 n.2 (5th Cir. 2021).

## B. Exhaustion of Administrative Remedies

O'Malley argues that Green's claims regarding reasonable accommodations, denial of leave requests, improperly disabling his access to his work account, and wrongful termination are not properly pending before this Court due to Green's failure to exhaust administrative remedies. See Record Document 52-2 at 14. He asserts that Green did not complete or even initiate the requisite administrative procedures before bringing these claims in district court in his amended complaint. See id. at 11. O'Malley concedes that the administrative remedies regarding the 2020 PACS appraisal claims were properly exhausted. See id. at 13.

Federal employee RA claims are subject to the exhaustion requirements set forth in Title VII. See Smith v. Potter, 400 F. App'x. 806, 811 (5th Cir. 2010) (quoting Prewitt v. United States Postal Serv., 662 F.2d 292, 304 (5th Cir. 1981)). To properly exhaust administrative remedies, a claimant must initiate contact and request informal counseling from an agency EEOC counselor within 45 days of the date of the matter alleged to be

7

discriminatory. See Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002); 29 C.F.R. § 1614.105(a)(1). The 45-day period "starts running when the plaintiff knows of the discriminatory act, not when the plaintiff perceives a discriminatory motive behind the act." Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1217 and n.2 (5th Cir. 1992). If the counselor is unable to resolve the matter, the federal employee must then file a charge of discrimination with the EEOC division of her agency and receive a "right to sue" letter before filing suit. See 42 U.S.C. § 2000e-5(e)(1); see also 29 C.F.R. § 1614.106; Pacheco v. Mineta, 448 F.3d 783, 788 (5th Cir. 2006). Upon receipt of notice of final action taken by the department or agency, an employee has ninety days to appeal with the EEOC or file a suit in federal district court. See 42 U.S.C. § 2000e–16(c). Exhaustion of administrative remedies is also a requirement in the retaliation context under the RA. See Smith, 400 Fed.Appx. 811-12. The only claims which may be brought in federal court are ones investigated by the EEOC or those which "can reasonably be expected to grow out of the charge of discrimination." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir.1970).

Regarding Green's termination, he has failed to exhaust administrative remedies. The Fifth Circuit found in Austin v. Potter that an employee failed to exhaust her administrative remedies because she failed to contact with a counselor after she received Notice of Removal stating that her employment would be terminated. See 358 Fed.Appx. 602, 605-6 (5th Cir. 2010). The former employee in Austin argued that her termination resulted from retaliation and a hostile work environment. See id. at 604. The Austin court noted that "[f]ederal regulations interpreting Title VII provide for an extension of the forty-five-day period where the Title VII claimant 'did not know and reasonably should not have

8

been [sic] known that the discriminatory matter or personnel action occurred.'" <u>See id.</u> at 605. Additionally, the Fifth Circuit stated that it occasionally permitted equitable tolling under certain circumstances, none of which are applicable in the current case.[3] Here, O'Malley provided evidence that Green was issued Notice of Proposed Removal due to alleged acts of misconduct, much like the plaintiff in <u>Austin</u>, on January 28, 2022. <u>See id.</u> at 604; <u>see also</u> Record Document 52-3 at 18; <u>see also</u> Record Document 52-4 at 3. There is no evidence that Green initiated contact with an EEOC officer within forty-five days of when he received his Notice of Proposed Removal from Smith. Additionally, Green has not demonstrated that he "did not know and reasonably should not have been [sic] known that the discriminatory ... personnel action occurred," nor has he demonstrated any basis for equitably tolling the forty-five-day filing period. <u>Austin</u>, 358 Fed.Appx. 606. Thus, Green failed to exhaust his administrative remedies regarding his termination.

Further, there is no competent summary judgment evidence that Green initiated contact with an EEOC counselor regarding his claims that he was denied leave or that Smith failed to properly approve his timesheet and improperly disabled his work account. Therefore, Green failed to exhaust his remedies because he did not pursue administrative remedies first. <u>See</u> <u>Smith</u>, 400 Fed.Appx at 812.

As stated above, the Court has jurisdiction over any claim that "can reasonably be expected to grow out of the charge of discrimination." <u>Sanchez</u>, 431 F.2d 466. The Court

---

[3] <u>See</u> <u>Austin</u>, 358 Fed.Appx. 605 ("We have also occasionally permitted equitable tolling of the forty-five-day period in other discrimination cases in three circumstances: '(1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights.'") (citing <u>Manning v. Chevron Chem. Co., LLC</u>, 332 F.3d 874, 880 (5th Cir. 2003) (citing <u>Blumberg v. HCA Mgmt. Co.</u>, 848 F.2d 642, 644 (5th Cir.1988)).

must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." Pacheco, 448 F.3d at 789. In his Amended Complaint, Green alleges that he suffered retaliatory conduct including "denial of reasonable accommodations." Record Document 6 at 3. In Green's 2021 formal EEOC complaint under the "Issue" section, he included the phrase "failure to accommodate disability." Record Document 52-5 at 27. However, Green was advised to seek counseling regarding his reasonable accommodation claim in the Letter of Acceptance accepting his PACS appraisal claim, as he "did not describe or provide any supporting details or incidents as would have been discussed with a counselor." Record Document 52-5 at 32; see also Record Document 52-5 at 15.

While the administrative charge, rarely drawn by an attorney, must be viewed "in its broadest reasonable sense," "the only absolutely essential element of a timely charge of discrimination is the allegation of fact contained therein." Sanchez, 431 F.2d at 467. Green provided a narrative statement in his 2021 formal EEOC complaint which detailed his grievances against Smith regarding his PACS appraisal. See Record Document 52-5 at 29. Specifically, it stated that "[Green] feels the language changed from the 2019 appraisal to the 2020 appraisal because of EEOC activities involving himself, [S]mith, and other members of management." See id. at 30. The Court notes that Green's complaint was prepared by an attorney. See id. at 32.

In reviewing the narrative statement, the question is whether a failure to accommodate investigation might reasonably be expected to grow out of the facts that Green alleged. See Pacheco, 448 F.3d at 791. In deciding this question, a review of the

*prima facie* case for a failure to make reasonable accommodations is relevant. See id. Discrimination based on disability includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship." Thus, a plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations. Feist v. La., Dep't of Justice, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)) (citing Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013); Cloe v. City of Indianapolis, 712 F.3d 1171, 1176 (7th Cir. 2013); Griffin v. UPS, 661 F.3d 216, 222 (5th Cir. 2011); Mzyk v. N.E. Indep. Sch. Dist., 397 F. App'x 13, 16 n.3 (5th Cir. 2010)).

On its face, the factual allegations in Green's formal EEOC complaint do not allege any of the above elements of a failure to accommodate claim. Instead, it is facially a disparate treatment discrimination claim based on his 2020 PACS appraisal. See Record Document 52-5 at 29-30. Particularly, Green was issued a Reasonable Accommodation Decision letter on December 11, 2020, and nowhere in the narrative statement does Green provide any specific allegations regarding in the denial of his reasonable accommodations request nor are there any factual allegations regarding denial of any reasonable accommodations after that decision was rendered. See id. Further, and more importantly, Green was notified that he must seek EEOC counseling within forty-five calendar days of the decision if he felt that the Agency discriminated against him with

11

respect to the decision to deny several items in his accommodations request. See Record Document 52-4 at 12. His formal EEOC complaint was filed on February 2, 2021, fifty-three calendar days after the decision was rendered, and Green provided no summary judgment evidence that he sought counseling regarding the denial of those accommodations within the forty-five-day period. See Record Document 52-5 at 2.

As the Pacheco court noted, the Fifth Circuit does not require that a Title VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency. See Sanchez, 431 F.2d at 463–65. Nor does the Fifth Circuit require, for purposes of exhaustion, that a plaintiff allege a *prima face* case before the EEOC. See id. Instead, the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger. See Pacheco, 448 F.3d at 792. The Court finds that Green did not exhaust his administrative remedies with respect to his claim regarding a denial of reasonable accommodations as it could not reasonably have been expected to grow out of Green's formal EEOC complaint because: (1) it is facially a disparate treatment claim; (2) Green's formal EEOC complaint contains no factual allegations regarding the denial of his reasonable accommodations request; and (3) there is no evidence that Green sought counseling within the requisite forty-five day period of the alleged discrimination despite being given notice in the decision letter and in the Letter of Acceptance given in response to his 2021 formal EEOC complaint.

Green does not allege or provide any evidence that he sought counseling, filed an EEOC complaint, the EEOC issued a right-to-sue letter, or that he ever received a right-to-sue letter regarding claims against O'Malley aside from the claims arising out of his

2020 PACS appraisal. Thus, to the extent Green premises his RA claims on the failure to accommodate, denial of leave requests, improperly disabling his access to his work account, and wrongful termination, the Court grants summary judgment for O'Malley. The Court will analyze the discrimination and retaliation claims relating to the assertions arising out of the 2020 PACS appraisal only as he has properly exhausted his administrative remedies in receiving a FAD and filing suit in a timely manner.[4]

## C. Discrimination under the RA

O'Malley asserts that Green cannot establish a *prima facie* case of disparate treatment in his discrimination claim. See Record Document 52-2 at 15. He argues that Green's Fiscal Year 2020 PACS appraisal reflects a "successful" rating, and that he cannot allege that the 2020 performance review constitutes discrimination in the terms, conditions, or privileges of his employment, and that his successful performance appraisal the same year could not have been an adverse employment action. See id. O'Malley additionally argues that Green's alleged disabilities played no role whatsoever in Smith's 2020 evaluation of his work performance. See id. at 16.

When a plaintiff relies on circumstantial evidence on a discrimination claim, the court generally analyzes the claim under the McDonnell Douglas framework, which allows a plaintiff to create a presumption of discrimination by establishing a *prima facie* case of

---

[4] Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. See Dao v. Auchan Hypermarket, 96 F.3d 787, 788–89 (5th Cir. 1996). Title VII provides that claimants have ninety days to file a civil action after receipt of such a notice from the EEOC. See Nilsen v. City of Moss Point, Miss., 674 F.2d 379, 381 (5th Cir. 1982) (citing 42 U.S.C. § 2000e–5(f)(1) (1994)). This requirement to file a lawsuit within the ninety-day limitation period is strictly construed. See Ringgold v. National Maintenance Corp., 796 F.2d 769, 770 (5th Cir. 1986); Espinoza v. Missouri Pacific R.R. Co., 754 F.2d 1247, 1251 (5th Cir. 1985). The FAD regarding Green's 2020 PACS appraisal was issued on August 17, 2021, and notified Green of his right to sue within ninety days. See Record Document 52-5 at 11-12. Green filed this suit on November 11, 2021, within the required ninety-day period (86 days after receiving the FAD). See Record Document 1.

discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973); see also Houston v. Texas Dep't of Agric., 17 F.4th 576, 585 (5th Cir. 2021) ("Rehabilitation Act claims are also analyzed under the McDonnell Douglas burden-shifting framework."); Milton v. Nicholson, 256 F. App'x 655, 657 (5th Cir. 2007) ("The standards used to determine whether [the Rehabilitation Act] has been violated … shall be the standards applied under … the Americans with Disabilities Act… In a case brought under the [ADA], the court applies the burden-shifting analysis from McDonnell Douglas….") (cleaned up). The elements necessary to plead a cause of action of disability discrimination under the RA and the standards governing such claims are "operationally identical" to those required to state a claim under the ADA. Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 676 n.8 (5th Cir. 2004). "The only material difference between the two provisions lies in their respective causation requirements." Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005).

To establish a *prima facie* case for disability discrimination under the RA, Green must identify competent summary judgment evidence showing that he: (1) has a disability; (2) was qualified for the job; and (3) was subjected to an adverse employment decision on account of his disability. See Taylor v. Univ. of Miss. Med. Ctr., No. 19-331, 2023 WL 3369090 at *6 (S.D. Miss. Apr. 13, 2023) (citing EEOC v. LHC Group, Inc., 773 F.3d 688, 695 (5th Cir. 2014)). The third prong usually requires plaintiffs to show a "causal nexus," or "causal connection," between the adverse employment action and the employee's disability. Id. Most importantly, it requires plaintiffs to show that the alleged disability discrimination was the *sole* reason for the employer's adverse employment decision. See Wilson v. City of Southlake, 936 F.3d 326, 329–30 (5th Cir. 2019).

Further, in its *en banc* Hamilton decision, the Fifth Circuit rejected its earlier "ultimate employment decision" test for an "adverse employment action" in favor of a less strict standard. Hamilton v. Dallas Cnty., 79 F.4th 494, 502 (5th Cir. 2023) (en banc). Now, "a Title VII plaintiff may recover damages even for 'discrimination in the terms, conditions, or privileges of employment' that 'did not involve a discharge,' 'loss of pay,' or other 'concrete effect on [his or her] employment status.'" Id. at 501. The Fifth Circuit subsequently applied Hamilton in another recent decision, Harrison v. Brookhaven School District, and held that to state a discrimination claim, a plaintiff "must allege not only an adverse action, but something more than a *de minimis* harm borne of that action." 82 F.4th 427, 431 (5th Cir. 2023) (citation omitted). The court noted that this is often referred to as the "materiality" half of the analysis. Id. In other words, the "*de minimis*" and "materiality" standards are one and the same. Dixon v. Garland, No. 23-19, 2024 WL 150509 at *4 (N.D. Tex. Jan. 12, 2024). Materiality is a shorthand characterization of the well-established *de minimis* standard, which "has roots that stretch to ancient soil." Harrison, 82 F.4th at 423. And thus, courts must give the *de minimis* standard its familiar meaning— "de minimis non curat lex (the law does not take account of trifles)." Id. Applying this standard, a plaintiff alleges an adverse employment action if he alleges more than *de minimis* discrimination in the terms, conditions, or privileges of employment. See id.

In Harrison, the plaintiff, a black female educator and school administrator, sued her school district for promising and then refusing to pay for her to attend a training program for prospective superintendents. See id. at 428. Like the current case, the only element of her claim at issue was whether she suffered an adverse employment action.

See id. at 429. The court held that Harrison "allege[d] more than a *de minimis* injury inflicted on her by the School District's adverse action: the personal expenditure of approximately $2,000." Id. at 432. The court explained that this "is not a *de minimis* out-of-pocket injury, particularly when that expense was originally promised to be paid by someone else." Id. Thus, the court concluded that "Harrison's injury clears the *de minimis* threshold." Id.

In a recent unpublished decision, the Dixon court analyzed several purported adverse employment actions under the new standard provided by Hamilton and Harrison. See Dixon, 2024 WL 150509 at *4-6. The plaintiff in Dixon claimed that receiving "excellent" performance reviews, as opposed to "outstanding," was an adverse employment action. Id. at *5. The plaintiff claimed that her "excellent" reviews materially impacted her ability to receive raises. Id. The court noted that it refused to act as the employer's "super-personnel department" and that it would not scrutinize the specifics of standard performance reviews. Id. (citing Johnson v. McDonald, 623 F.App'x 701, 704 (5th Cir. 2015)). The court found that the plaintiff failed to establish her *prima facie* case of discrimination as none of the alleged adverse employment actions rose above the *de minimus* standard articulated in Harrison. See id. at *6.

This Court reaches a similar result in considering Green's claim that his 2020 PACS appraisal was "sharply different" from his past performance appraisals. Record Document 6 at 3. As stated above, the SSA's PACS offers three summary appraisal rating of record levels, with a Level 5 "Outstanding Contribution" and the "more typical successful employees" at a Level 3 "Successful Contribution." See Record Document 52-5 at 43. The record reflects that in both his 2019 and 2020 PACS appraisals, Green

received a "Successful Contribution" appraisal, with identical scores in the "Ratings in Individual Elements" section. Record Document 52-4 at 5; Record Document 52-3 at 13. Additionally, Green did not use the opportunity to submit a self-assessment in either 2019 or 2020. See Record Document 52-3 at 6. In his Amended Complaint, Green seems to base his claim on the commentary provided by Smith under each rating, claiming the information was "derogatory and defamatory." Record Document 6 at 3. However, like the court in Dixon, this Court declines to scrutinize the specifics of standard performance reviews. Therefore, given the evidence provided, O'Malley has met the burden of proving that Green cannot establish a *prima facie* case of discrimination as his allegations regarding his 2020 PACS appraisal do not rise above the *de minimus* standard articulated in Harrison.[5]

Further, although the record reflects that Smith had knowledge of Green's protected activity, See Record Document 52-4 at 2, 4, Green has not proffered any proper summary judgment evidence to establish that his disability was the sole cause of his purportedly adverse employment action. Because he also cannot meet that high bar regarding the third element, his disability discrimination claim must fail. See Taylor, 2023 WL 3369090 at *6.

Because the Court finds that Green has not established a *prima facie* case of discrimination, it need not continue the McDonnell Douglas analysis.

---

[5] The Court notes that, pre-Harrison, the Fifth Circuit held that a performance review, standing alone, "plainly does not meet the ultimate-employment-decision test." Mitchell v. Snow, 326 F. App'x 852, 855 (5th Cir. 2009). See also Thibodeaux-Woody v. Houston Cmty. Coll., 593 F. App'x 280, 286 (5th Cir. 2014) ("[P]erformance reviews typically constitute adverse actions only when attached to financial harms") (quoting Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008)).

### D.  Retaliation under the RA

Like above, when a plaintiff relies on circumstantial evidence, to succeed on his retaliation claims he must satisfy the burden-shifting McDonnell Douglas test. See Nall v. BNSF Ry. Co., 917 F.3d 335, 340 (5th Cir. 2019). First, he must make out a *prima facie* case by showing (1) engagement in protected activity, (2) an adverse employment action, and (3) a causal connection between the two. See id. at 348–49. If he does so, O'Malley must come forward with a legitimate, non-discriminatory reason for the adverse action. See id. Once it does, Green must then show "sufficient evidence that the proffered reason is a pretext for retaliation." Id. at 349. O'Malley contests only whether Green established a causal connection between his acts and Smith's issuance of the 2020 PACS appraisal. O'Malley argues that the significant gap in time between the filing of Green's EEOC complaints and the employment actions made subject of this suit negates causation. See Record Document 52-2 at 19. According to the Court's analysis above, Green has not suffered an adverse employment action and therefore cannot meet the second element of a *prima facie* case of retaliation.[6] However, the Court will address O'Malley's argument in an abundance of caution.

To survive summary judgment, a plaintiff must demonstrate that "a causal link exists between the protected activity" and the complained of discriminatory "terms, conditions, or privileges of employment" or adverse employment action. Gorman v. Verizon Wireless Tex., L.L.C., 753 F.3d 165, 170 (5th Cir. 2014); Hamilton, 79 F.4th at 499–506 (eliminating the adverse employment action requirement from a *prima facie*

---

[6] The recent Hamilton and Harrison decisions also apply to retaliation claims. See Harris v. Amazon.Com, Inc., No. 23-10556, 2024 WL 688255 at *2 (5th Cir. Feb. 20, 2024) (Vacating and remanding to allow the district court to address Amazon's motion to dismiss the plaintiff's sex discrimination and retaliation claims in light of Hamilton and Harrison).

case). To prove retaliation, Green must show that the purported adverse employment action was actually connected to his EEOC activities. See Henderson v. Shinseki, No. 09-188, 2009 WL 4931391 at *4 (N.D. Tex. Dec. 21, 2009). While generally, a causal link "is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity," Nall v. BNSF Ry. Co., 917 F.3d 335, 349 (5th Cir. 2019), it can also "be established simply by showing close enough timing between the two events." Garcia v. Pro. Cont. Servs., Inc., 938 F.3d 236, 241 (5th Cir. 2019).

Because Green has provided no direct evidence of a causal link, the only remaining evidence is the temporal proximity between his protected activity and the purported adverse employment decision. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" Lopez-Baca v. Geren, 599 F.Supp.2d 744, 757 (W.D. Tex. 2008) (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L.Ed.2d 509 (2001)). The Fifth Circuit has held that a period of a few months is sufficient to satisfy causation in a *prima facie* case. See Outley v. Luke & Assocs., Inc., 840 F.3d 212, 219 (5th Cir. 2016) (holding two months sufficient to show causal connection). The Fifth Circuit recently held that "a mere six weeks" lapse in time "does the trick." January v. City of Huntsville, 74 F.4th 646, 653 (5th Cir. 2023). The Fifth Circuit has also found that "a time lapse of up to four months" may be sufficiently close, Evans v. Houston, 246 F.3d 344, 354 (5th Cir. 2001), while a five-month lapse is not close enough without other evidence of retaliation, Raggs v. Miss. Power & Light Co., 278 F.3d

463, 472 (5th Cir. 2002). Additional evidence beyond temporal proximity alone may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures. <u>See</u> <u>Schroeder v. Greater New Orleans Fed. Credit Union</u>, 664 F.3d 1016, 1024 (5th Cir. 2011).

Smith signed the PACS appraisal on November 17, 2020. <u>See</u> Record Document 52-3 at 17. The EEOC complaint filed in 2019 is clearly beyond the four-month threshold for causation, although the Court was not provided a specific date. On or about March 10, 2020, Green made a request for various accommodations based on his disabilities. <u>See</u> Record Document 52-4 at 2. It is undisputed that this constituted protected activity. However, eight months and seven days passed between the above dates before Smith issued the appraisal. Thus, absent more evidence, Green cannot prove causation between his engaging in protected activity and the purported adverse employment action and has not established a *prima facie* case of retaliation under the RA.

## CONCLUSION

Based on the reasons explained above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Record Document 52) is **GRANTED.** All of Green's claims against O'Malley are **DISMISSED WITH PREJUDICE.**

A judgment consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 6th day of March, 2024.

S. Maurice Hicks, Jr.
United States District Judge